DECISION AND JUDGMENT ENTRY
This case is before the court as a consolidated appeal from judgments of the Ottawa County Court of Common Pleas. Following a jury trial, appellant, Robin Masing, was found guilty of robbery, in violation of R.C. 2911.02(A)(2), and aggravated burglary, in violation of R.C.2911.11(A)(1).
On February 7, 2001, appellant's jury trial commenced. The state presented the testimony of Timothy Minton, Jr., appellant's third cousin. Minton said that on April 29, 2000, he had just returned home from the store and had paid his babysitter, Alicia Duncan, when appellant walked in the front door. Minton said that he smelled beer on appellant's breath, and appellant appeared intoxicated and acted "wild". According to Minton's testimony, appellant called Minton a snitch and "a lot of bad names," and accused Minton of having him "put away." Appellant then grabbed Minton's wallet and tried to leave. Minton said that when he attempted to detain appellant, a struggle ensued and appellant hit or pushed him before escaping through the front door. Minton said that he had a confrontation in his home with appellant one or two weeks prior to the April 29 incident.
Minton also testified on direct examination that he had been convicted of four, prior theft-related felonies, that he had served time in prison, and that he had "told on" some other people. He testified that he had been going to Bay Shore Counseling, and that Children's Services and the Mental Retardation and Developmental Disabilities Board had provided assistance to him and his family.
During cross-examination, Minton admitted to a history of alcohol problems and drug abuse, and said that there was an abuse or neglect case pending with the Department of Human Services ("DHS"). Minton testified that he was receiving disability income for being a "manic depressant", and that his previous diagnoses may have included seizures, suicidal, and alcoholic. Minton further admitted on cross-examination that he had heard voices and experienced drug-induced hallucinations, and that he had been hospitalized for mental health issues.
Sergeant Bradley York of the Ottawa County Sheriff's Department testified that when he arrived at Minton's apartment at approximately 12:30 a.m. on April 29, 2000, he observed that Minton was out of breath, and had a large scratch on his shoulder and a red mark on his forehead. Minton told York that appellant had "barged his way into the apartment," taken money, and fought with him. Minton gave York a description of appellant's clothing and told York that appellant had taken four $20 bills, one $5 bill, and three $1 bills.
Officer York testified that he and another officer found appellant in a field behind Minton's apartment complex dressed in clothing that fit the description Minton had given. York said the only money found on appellant was $88 in the exact denomination Minton had described. Appellant told York he did not take any money, and that he had been at Minton's house drinking beer. York did not notice any physical marks on appellant.
The jury returned guilty verdicts to both counts of the indictment. Appellant was sentenced April 18, 2001, to seven years for the robbery charge, and nine years for aggravated burglary, with the sentences to be served concurrently and ninety-one days credit given for time served.
Appellant filed a motion for a new trial April 13, 2001, pursuant to Crim.R. 33 and R.C. 2945.79, arguing that Minton lied under oath. Appellant also introduced newly discovered evidence in the form of an affidavit contradicting Minton's testimony. Appellant supplemented this motion May 16, 2001, with another affidavit from a potential witness who claimed Duncan, Minton's babysitter, was planning to testify for appellant. Appellant filed a second supplemental motion May 30, 2001, claiming prosecutorial misconduct. The state attached to its response to appellant's motions an affidavit from Duncan's mother stating that Duncan's testimony would have corroborated Minton's version of the events on April 29, 2000.
Following a hearing, the trial court denied appellant's motion, finding that appellant could have discovered the witnesses whose affidavits he attached to his motion had he exercised due diligence. Regarding prosecutorial misconduct, the court pointed out that appellant's counsel did not object to the prosecutor's comments, and then ruled that the comments did not rise to the level of plain error. The court found that statements made by the prosecutor were "fair comment" based on the evidence and "defendant's testimony." However, the trial transcript reveals that appellant chose not to testify at his trial.
Appellant, through counsel, filed a second notice of appeal with this court July 13, 2001, and a motion to consolidate. On July 23, 2001, this court granted appellant's motion to consolidate his appeal from his conviction, App. No. OT-01-022, and his appeal from the trial court's denial of his motion for a new trial, App. No. OT-01-032.
Appellant sets forth the following assignments of error:
"Assignment of Error No. I:
 "The Defendant/Appellant was denied his constitutional right right [sic] to counsel due to the ineffective assistance of appointed counsel.
"Assignment of Error No. II:
 "The Defendant/Appellant was deprived of his right to a fair trial because of the misconduct of the assistant prosecuting attorney.
"Assignment of Error No. III:
 "The jury's verdict and judgment were clearly and manifestly contrary to the evidence.
"Assignment of Error No. IV:
 "The Trial Court erred in denying the Defendant/Appellant's Criminal Rule 29 motion for acquittal.
"Assignment of Error No. V:
 "The Trial Court erred in denying the Defendant/Appellant's motion for a new trial."
Appellant's second assignment of error addresses the dispositive issue in this case. Appellant contends that prosecutorial misconduct during the course of the trial operated to deny him his constitutional right to a fair trial.
We note at the outset that appellant's counsel did not object to the remarks made by the prosecutor. Therefore, those alleged errors were not properly preserved for appeal and are, accordingly, waived. See State v.Wogenstahl (1996), 75 Ohio St.3d 344 . Thus, our review of the comments is discretionary and limited to plain error only. Crim.R. 52(B). In order to demonstrate plain error, appellant must establish that the outcome of his trial would have been different but for the alleged error. State v. Waddell (1996), 75 Ohio St.3d 163, 166; State v. Mundy
(1994), 99 Ohio App.3d 275, 300. The standard of plain error is whether substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process. State v.Swanson (1984), 16 Ohio App.3d 375, 377. The standard is the same regarding prosecutorial misconduct during closing arguments. See Statev. Smith (1984), 14 Ohio St.3d 13, 14.
In this case, appellant cites numerous comments made by the prosecutor throughout the trial in support of his claim of prosecutorial misconduct. However, the most troubling are statements the prosecutor made during his closing argument:
 "Ms. Kennedy did a nice job pointing out all of the faults that Tim Minton has. He has a lot of problems, but that young man is trying to straighten his life out. He has been on the straight and narrow. * * * He did the right things. The facts are as Tim Minton told you the facts were. * * * Ladies and gentlemen, I submit to you that what you heard from the stand was the truth from Tim Minton. * * * And the facts are exactly as he told you. * * * He is frank. He is honest. * * * But he told the truth. That is part of what he is trying to do to get on with his life. * * * He was frank with you. * * * Tim Minton is believable. He has no reason to lie to you today."
Although prosecutors are ordinarily granted wide latitude in closing arguments, the prosecutor in this case asserted that a witness was truthful. This constituted vouching for the witness and was improper. We note that the trial court did not give any cautionary instruction to the jury to disregard these improper statements.
The Ohio Supreme Court has emphasized that:
 "[t]he prosecutor carries into court the prestige of `the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.'" State v. Keenan (1993), 66 Ohio St.3d 402, 406, quoting Berger v. United States (1935), 295 U.S. 78, 88.
The court has further explained that "`[e]xpressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.'" State v. Rahman (1986), 23 Ohio St.3d 146, 154, quotingBerger, supra.
DR 7-106 of the Ohio Code of Professional Responsibility states:
 "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
"* * *
 "(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, * * * or as to the guilt or innocence of an accused * * *."
The American Bar Association's Model Rules of Professional Conduct Rule 3.4, and Criminal Justice Standards 3-5.8 contain nearly identical language.
However, we are mindful that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. The effect of the prosecutor's misconduct must be considered in light of the whole case. State v. Maurer (1984),15 Ohio St.3d 239, 266.
Following a thorough review of the record, especially Minton's testimony, we cannot say beyond a reasonable doubt that the outcome of appellant's trial would have been the same had there been no misconduct on the part of the prosecution. Therefore, we find that the prosecutor's comments prejudicially affected appellant's rights and rise to the level of plain error.
This court's disposition of appellant's second assignment of error renders his remaining assignments of error moot. Accordingly, we need not address them. See App.R. 12(A)(1)(c). On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., JUDGES CONCUR.